**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-11-02372-PHX-GMS |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Victor Hugo Orbegoso, | |
| Defendant. | |

Pending before the Court is Defendant Victor Hugo Orbegoso's Motion to Suppress Evidence. (Doc. 50.) For the reasons discussed below, Orbegoso's Motion is denied.

## BACKGROUND

The Government brings this suit against Orbegoso alleging that Orbegoso concealed and transported currency to the United States from out of the country and conducted financial transactions with the intent of avoiding reporting requirements in violation of 31 U.S.C. §§ 5332(a)(1) and 5324(a)(3), (d)(1). (Doc. 3 at 1–2.)

From 2010 to 2011, federal law enforcement investigated Orbegoso by, among other methods, placing a GPS tracking device on his vehicle without a warrant. (Doc. 61 at 2.) Orbegoso was pulled over twice after the device was installed: once on July 2, 2010 and again on September 6, 2010. (Doc. 50 at 2.) At both stops, authorities requested and received Orbegoso's consent to search his vehicle. (*Id.* at 3.) During the first stop, the Government obtained evidence for its investigation in the form of statements by

Orbegoso and bank receipts for deposits at financial institutions. (*Id.*) During the second stop, authorities found and seized $64,382.17 from Orbegoso, as well as statements regarding Orbegoso's currency exchange business. (*Id.* at 4.)

During the time that the Government was using the GPS device to track Orbegoso's vehicle, it was also monitoring Orbegoso's location under a warrant authorizing the release of tracking information from two of Orbegoso's phones. (Doc. 61 at 3.) The Government obtained a number of orders authorizing this practice, the last of which was in effect from August 11, 2010 to September 25, 2010. Evid. Hr'g at 36:20–37:3, Jan. 10, 2013. Specifically, the warrant authorizing tracking on Orbegoso's phone was in place during the September 6, 2010 stop. *Id.* at 49:23–50:1. The Government contends that, at least with regard to Orbegoso's bank records, the evidence gathered did not depend on the GPS device but was instead collected by using the cell phone information, physical surveillance, and other investigative leads. (*Id.* at 4.)

Orbegoso now moves to suppress any evidence derived from the use of the GPS device, arguing that (1) the placement of the GPS device without a warrant violated his Fourth Amendment right to privacy, (2) the exclusionary rule and the "fruit of the poisonous tree" doctrine require suppression of the bank records and any evidence gathered during the traffic stops, and (3) the Government had no good-faith basis for attaching the GPS to Orbegoso's vehicle. The Government, in response, argues that (1) it had a good faith basis for attaching the GPS device, (2) its use of the GPS was supported by probable cause, and (3) the fact that the two traffic stops were pretextual does not render them illegal.

The Court held an evidentiary hearing on the Motion on January 10, 2013. At the hearing, Orbegoso made the new argument that the evidence gathered from the September 6th stop should be suppressed because the officer conducting the search exceeded the scope of Orbegoso's consent. Finally, Orbegoso argued that because the Government lost or destroyed the GPS tracking data from the September 6th stop, he is entitled to the adverse inference that he was not speeding at the time that he was pulled

over, and thus that there was no probable cause for the stop.

## DISCUSSION

In *United States v. Jones*, decided on January 23, 2012, the Supreme Court held that the use of a GPS device on a suspect's vehicle constituted a "search" under the Fourth Amendment because it involved "the Government physically occup[ying] private property for the purpose of obtaining information." 132 S.Ct. 945, 949 (2012). The majority opinion in *Jones* relied on the common-law trespass framework that guided Fourth Amendment analysis until the latter half of the 20th century and not the "reasonable expectation of privacy" framework developed in more recent cases. *Id*. However, Justice Alito's concurrence analyzed the placement of the GPS tracker using the more modern "reasonable expectation of privacy" standard, and found that the use of the GPS device in this case did violate that expectation. *Id.* at 964. Relying heavily on this concurrence, Orbegoso asserts that his reasonable expectation of privacy was violated by the Government's use of the GPS device on his car. The Government does not contest this assertion; rather, it focuses on the reasons why, despite the violation, the evidence it gathered should not be suppressed. Thus, the Court will assume without deciding that Orbegoso's reasonable expectation of privacy was violated by the Government's use of the GPS device.

## I.    Good Faith

The existence of a Fourth Amendment violation does not necessarily lead to the exclusion of evidence. *Arizona v. Evans*, 514 U.S. 1, 13–14. Rather, excluding evidence for Fourth Amendment violations is a judicially-crafted rule designed to deter police misconduct, and should be applied only if the objectives of the rule would be "efficaciously served." *Id.* Thus, "the harsh sanction of exclusion should not be applied to deter objectively reasonable law enforcement activity." *Davis v. United States*, 131 S. Ct. 2419, 2429. When a police officer "conducts a search in reliance on binding appellate precedent," evidence gathered from that search should not be suppressed. *Id.*

It is undisputed that the holding in *Jones* did not control at the time that

government agents were using the GPS device on Orbegoso. The Government argues that its agents relied in good faith on "binding appellate precedent" when they placed the GPS on Orbegoso's vehicle and used it to track his movements. It points to *United States v. Pineda–Moreno*, a Ninth Circuit decision issued in January 2010 that was controlling for the relevant period for this case. 591 F.3d 1212, *cert. granted, judgment vacated*, 132 S. Ct. 1533 (2012) (*Pineda–Moreno I*). In *Pineda–Moreno I*, the Ninth Circuit held that government agents did not violate the defendant's Fourth Amendment rights either by entering his driveway, attaching a GPS device to the underside of his car in the middle of the night, or continuously monitoring the location of his car using the GPS device. *Id.* at 1215–16. In addition, on remand after *Jones* was decided, the Ninth Circuit found a wealth of binding appellate precedent to permit a holding that the government agents in *Pineda–Moreno I* had acted in good faith in attaching and monitoring the GPS device. *United States v. Pineda–Moreno*, 688 F.3d 1087, 1090 (9th Cir. 2012) (*Pineda–Moreno II*) (citing *United States v. McIver*, 186 F.3d 1119, 1126–27 (9th Cir. 1999) (holding that placing an electronic tracking device on a car was neither a search nor a seizure); *United States v. Miroyan*, 577 F.2d 489, 492 (9th Cir. 1978) (holding that "the monitorial use of the [tracking] device cannot constitute a search"); *United States v. Hufford*, 539 F.2d 32, 34 (9th Cir. 1976) (holding that a defendant had no reasonable expectation of privacy in his movements driving along a public road)).

In reply, Orbegoso contends that these cases do not constitute binding appellate precedent because they are not factually similar. Orbegoso focuses on the fact that this case involves "the constant, continuous monitoring of all a defendant's movements in a vehicle for as long as four months." (Doc. 50 at 3.) However, nothing in the *Pineda– Moreno* opinions or the other cases cited by the Ninth Circuit as binding precedent limited their holdings to continuous tracking for only short periods of time. In fact, in *Pineda–Moreno I*, agents used various tracking devices to monitor the defendant's movements for a four-month period. 591 F.3d at 1213. That the facts of *Pineda–Moreno I* and the facts of this case are not identical does not mean that *Pineda–Moreno I* is not

binding appellate precedent in this circuit. To focus on distinctions as subtle as the ones set out by Orbegoso (i.e., that the tracking in *Pineda–Moreno I* consisted of tracking by various devices rather than a single device over the same period of time) would be to render the good-faith exception inoperable. The Court declines to rule that law enforcement cannot rely in good faith on binding precedent in their circuit unless the precedent is factually identical to their investigation. *Pineda–Moreno I* held that neither attaching a GPS to a vehicle nor using a GPS to track a suspect's movements for a prolonged period of time constituted an unconstitutional search or seizure under the Fourth Amendment. 591 F.3d at 1216. This holding was binding throughout the period of time that agents were investigating and using a GPS to track Orbegoso. Because the agents relied in good faith on this precedent in using the GPS on Orbegoso's vehicle, no deterrence would be served by excluding the evidence derived from the GPS tracker. The exclusionary rule should not be applied in this case.

**II.    Inevitable Discovery Rule**

"The inevitable discovery doctrine is an exception to the exclusionary rule." *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986) (citing *Nix v. Williams,* 467 U.S. 431, 444 (1984)). It operates to save evidence that was unlawfully seized if the Government can show, by a preponderance of the evidence, that the evidence would have been discovered inevitably by lawful means. *Id.*

As discussed above, at the time the Government was tracking Orbegoso with a GPS device on his car, it was also using a "ping tracker" on his cell phone to monitor his location and movement. (Doc. 61 at 3.) The ping tracking was authorized by warrant. (*Id.*) At the evidentiary hearing, Jay Fawcett, an officer assigned to Orbegoso's investigation, testified that every time the task force went on surveillance, it was using both the GPS and the cell phone ping to track the suspect. Evid. Hr'g at 63:21–22. In addition, Fawcett testified that agents used physical surveillance and border watch information to facilitate their investigation. *Id.* at 29:6–9. Fawcett testified that, based on the physical surveillance alone, he was able to see "discernible patterns" in Orbegoso's

activity. *Id.* at 27:8–23. For example, the physical surveillance showed that Orbegoso "made regular trips to banking institutions throughout the Valley," as well as frequent trips to Mexico. *Id.* at 27:14–20.

The agents investigating Orbegoso were using other lawful means of monitoring Orbegoso aside from tracking his movements with a GPS device. The physical surveillance on Orbegoso would have yielded the information on what banking institutions Orbegoso frequented, and would have allowed officers to know which banks to subpoena for financial records. The agents' knowledge of Orbegoso's regular trips to Mexico, along with their monitoring of his movements using the cell phone ping tracker, would have produced the information on Orbegoso's location that allowed officers to pull Orbegoso over on July 2nd and September 6th. Thus, the Government has shown by a preponderance of the evidence that, even if the agents had not placed a GPS device on Orbegoso's car without a warrant, they would have obtained the evidence that Orbegoso now seeks to suppress. The inevitable discovery doctrine applies, and the evidence should not be excluded.

**III.   Scope of Consent to Search**

At the evidentiary hearing, Orbegoso argued that the evidence gathered from the September 6th stop should be suppressed because the officer conducted the search obtained Orbegoso's consent only for a search of "drugs and weapons," not for a search of money.

The plain view doctrine permits evidence to be seized without a warrant. Under that doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). The rationale for the doctrine is that "once an otherwise lawful search is in progress," if "the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous . . . to require them to ignore it until they have obtained a warrant particularly describing it." *Coolidge v. New Hampshire*, 403

U.S. 443, 467–68 (1971).

At the evidentiary hearing, Officer Goodman testified that after he pulled Orbegoso over, Orbegoso consented to a search of his vehicle. Evid. Hr'g at 130:3–9. Orbegoso insists that his consent was limited to a search of only drug-related items or weapons, and that Officer Goodman therefore exceeded the scope of his consent when he opened a backpack in Orbegoso's car and found a large sum of cash in it. *Id.* at 159:2– 161:9. However, nothing in the case law indicates that, once an officer obtains consent to search an area, he or she is limited to discovering only evidence on the items specifically described in the initial request for consent. Indeed, the plain view doctrine allows an officer to seize any evidence discovered in the process of conducting a lawful search. Orbegoso consented to the search of his vehicle, and Officer Goodman discovered the cash while conducting a lawful search pursuant to that consent. Thus, Officer Goodman was "lawfully in a position" where he could view the cash and had a lawful right of access to it. *Dickerson*, 508 U.S. at 375.

Orbegoso suggested during the hearing that his consent to the search was not voluntary. He testified that Officer Goodman was pushy when he asked for consent to search and that he did not feel free to go because of the way Goodman was asking the questions. Evid. Hr'g at 194:5–14. However, he testified that he was not handcuffed, placed in the police car, or otherwise restrained in any way. *Id.* at 196:19–197:7. Goodman testified that when he asked for consent, he explained that the search would be very quick, and that Orbegoso responded, "Yeah, go ahead," to the request. *Id.* at 130:3– 9. Based on this testimony, Orbegoso's consent to the search of his vehicle was voluntary.

The issue remains whether the incriminating character of the seized cash was immediately apparent. While large sums of money do not have inherently incriminating character, the circumstances and context of the search may affect the character of the money. *United States v. Green*, 599 F.3d 360, 376 (4th Cir. 2010). In addition, under the collective knowledge doctrine, the personal knowledge of an officer of relevant facts may

be imputed to an officer conducting a stop or search as long as there has been "some communication among agents." *United States v. Villasenor*, 608 F.3d 467, 475 (9th Cir. 2010) (internal quotations omitted). Goodman testified that when he first saw the cash in the backpack, it was "separated and divided using different color rubber bands, which is consistent with what [police] see with drug smuggling and . . . money that is confiscated from the drug smuggling trade." Evid. Hr'g at 131:1–14. Fawcett further testified that he and his task force suspected Orbegoso of engaging in money laundering for drug organizations, and that on September 6 he had been notified that Orbegoso had crossed the border from Mexico to the United States earlier in the day. *Id.* at 51:8–11, 72:9–16. Fawcett communicated with Goodman prior to the stop, so his knowledge of the suspicious nature of any large sum of money in Orbegoso's possession may be attributed to Goodman. *Id.* at 51:13–52:12. The Court therefore finds that the incriminating nature of the cash found in Orbegoso's car was immediately apparent.

As such, the Court rejects Orbegoso's argument that the evidence from the September 6th stop should be suppressed because the officer exceeded the scope of Orbegoso's consent to search the car. Officer Goodman's search of Orbegoso's vehicle was valid pursuant to Orbegoso's consent, and his discovery and subsequent seizure of the $64,382.17 was lawful pursuant to the plain view doctrine. Orbegoso's Motion to Suppress on this ground is denied.

**IV.    Spoliation of Evidence**

A district court has "broad discretionary power to . . . draw an adverse inference from the destruction or spoliation against the part or witness responsible for that behavior." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Orbegoso contends that he is entitled to an adverse inference that he was not speeding on September 6th because the Government did not download the data from that day from the GPS device on his car, which could have been used to approximate the speed at which he was traveling before he was stopped by Officer Goodman. Evid. Hr'g at 98:16–100:7.

However, sufficient evidence was produced at the hearing to show that Orbegoso

was in fact speeding on September 6th. Goodman testified that before he pulled Orbegoso over, he paced Orbegoso's vehicle at traveling eighty miles per hour in a sixty-five zone. *Id.* at 127:16–17. In addition, Goodman was shown a copy of the warning that he issued Orbegoso, which stated that Orbegoso was traveling at 65+ miles per hour. *Id.* at 155:7–21. Finally, Orbegoso himself testified that he normally drives on the highway "between five or seven miles above the speed limit." *Id.* at 192:11–12. He testified that on September 6, he was driving "a little above sixty-five" but not "all that much." *Id.* at 192:13–18. In light of this evidence, the Court will not draw an adverse inference that Orbegoso was not speeding on September 6th. Orbegoso's argument that he was not speeding, and that therefore there was no probable cause for his stop, is rejected.

**IT IS THEREFORE ORDERED** that Defendant Victor Hugo Orbegoso's Motion to Suppress Evidence (Doc. 50) is **DENIED**.

Dated this 15th day of January, 2013.

G. Murray Snow
United States District Judge